## The Thomas P. Way.[1]

## The Wesley Stoney.

### Bloomer *v.* The Thomas P. Way and The Wesley Stoney.[1]

*(District Court, E. D. New York. December 3, 1886.)*

COLLISION—STEAM-BOAT AND TOW—DRAW-BRIDGE—CUSTOM—DUTY TO KEEP IN PARTICULAR SIDE OF CHANNEL.

 The steamer T. P. W., after passing through the western passage of the draw in the railroad bridge over Newark bay, met with the tug W. S., with a scow and libelant's schooner in tow. It is customary for vessels bound both up and down the river to use the west passage. The tug whistled twice to the steam-boat, which made no reply, and continued on in about the middle of the channel. *Held*, that it was the duty of the steam-boat, after passing through the draw, to bear to the east, and allow the tug to pass through the western passage; that she was therefore solely liable for the collision.

In Admiralty.

*Wheeler & Cortis*, for David H. Bloomer.
*Butler, Stillman & Hubbard*, for the Thomas P. Way.
*Owen & Gray*, for the Wesley Stoney.

BENEDICT, J. This is an action by the owners of the schooner Banner against the Wesley Stoney and the steam-boat Thomas P. Way, to recover damages, occasioned by the running into of the libelant's

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

schooner by the steam-boat Thomas P. Way. The collision occurred in Newark bay, near the buoy, which is located just below the draw in the long railroad bridge over Newark bay. It was day-light at the time, with nothing to obstruct the vision of those on board the respective vessels. The tide was flood. The Thomas P. Way was bound down the river, and the Wesley Stoney was bound up the river, having a loaded scow on her starboard side, and the libelant's schooner on her port side. When the Wesley Stoney rounded the light-house, the Thomas P. Way was about at the west passage of the draw. This passage is the passage usually employed by vessels moving up, as well as down, the river. In view of this usage, under the circumstances proved, it was the duty of the Thomas P. Way, upon passing the draw, to bear to eastward, and allow the tug to pass her to the west, and so through the west passage of the draw. The tug, after passing the light-house, gave the Thomas P. Way a signal of two whistles, and kept on, no further east than the middle of the channel. This course enabled her to enter the west draw, and gave the Thomas P. Way room, after passing the draw, to go to the east, and pass the tug to the east side. The Thomas P. Way made no reply to the signal of the tug, and maintained a course that brought her in contact with the libelant's schooner, not far above the buoy, and no further east than the middle of the channel. As the vessels approached, and danger of collision appeared, the tug again gave a signal of two whistles, to which she received no reply, and in a very short time the collision occurred. The decisive question of the case, as it appears to me, is whether the Thomas P. Way went to east as far as she should, and as soon as she should, after passing the draw. Upon this question my decision is adverse to the Thomas P. Way. The neglect of the Thomas P. Way in this particular was a fault, and the sole cause of the collision that ensued.

The decree must therefore be that the libelant recover his damages of the Thomas P. Way, and that the libel as against the Stoney be dismissed, with costs.